was sentenced to 240 months in prison based on the use of a predicate offense that was not enumerated in the text of the then-applicable Career Offender Guidelines. Had he been sentenced without the Career Offender Enhancement, his advisory sentencing guidelines would have been 110 to 137 months. The Career Offender Guidelines provision under 4B.1.1 of the United States Sentencing Guidelines provisions offers two bases for enhancing a defendant's sentence. two prior convictions that qualify as either a crime of violence or a controlled substance offense. In this case, we have conceded that Mr. Harris has one prior qualifying drug offense. Therefore, if his 2003 conviction under North Carolina kidnapping second degree, if that conviction does not qualify as a predicate offense, the Career Offender Guidelines would not apply and we would ask that this court remand this case for resentencing. Under the 2015 Sentencing Guidelines, there were three possible ways to identify a crime as a crime of violence under 4B.1.2a, either using the force provision or an enumerated offense provision or the residual clause. The enumerated offenses at that time within the text of the guidelines were arson, burglary of a dwelling, extortion, or an offense involving use of explosive devices. Because the North Carolina second degree kidnapping statute does not require force, nor does it require serious potential risk of physical injury to another, the question today before the court is whether kidnapping by virtue of being section of the guidelines should be considered as an enumerated offense. And what is the commentary control in this case? Your Honor, there is a division among circuits as to whether it would control. My argument as set forth in my brief is that it should not control because it doesn't explain the career offender provision of 2L.1.2 doesn't have any definition whatsoever. Therefore, the commentary is needed in order to assist in understanding what the meaning of the career offender definition is in that context. In our case, under 4B.1.2a, that provision is in fact a definition of a crime of violence. And therefore, the commentary is not needed to explain or clarify. And in fact, I've argued it impermissibly adds to the definition that is within the guideline itself. There are several cases that support our position and actually this court previously in United States v. Shell actually undertook a similar analysis. That case, United States v. Shell, is not cited in my brief. The citation is 789 F. 3rd. 335. It was a 2015 case. And I would urge the court to consider that analysis rather than Flores-Granados. In that case... Why does Flores-Granados not control here? Your Honor, Flores-Granados is addressing the definition of a crime of violence as set 4B.1.2, not 4B.1.2. Right. But how is that a material distinction for purposes of this case? In this case, the two definitions are distinct from one another. And therefore, the analysis should be distinct. 2L.1.2 doesn't have any definition of a crime of violence within the actual text. It states that someone can be sentenced with an enhancement using a prior conviction for crime of violence, but there's no definition within 2L.1.2. In our case, because 4B.1.2 is itself a definition of crime of violence, we would submit that this is a material distinction between the two cases. And again, several courts have held that way, including this court, as I said, in United States v. Shell. That case addressed whether the North Carolina Second Degree Rape Statute should be considered as a crime of violence. And in noting that that very statute, the North Carolina Second Degree Rape Statute, had been found to be a crime of violence under 2L.1.2, this court nonetheless found that under 4B.1.2, that very statute did not qualify as a crime of violence. Again, because they are two distinct sections of the guidelines, and the Sentencing Commission has treated them differently in analysis. There are other cases in other circuits. There's the case of United States v. Rollins in the Seventh Circuit. That citation is 836F.3.737. United States v. Soto Rivera in the First Circuit, 840F.3.963. And United States v. Soto Rivera in the First Circuit, 811F.3.963. Those three cases also followed the analysis that 4B.1.2 is materially different from 2L.1.2, and that the analysis regarding which crimes can be case would be different because either under the enumerated clause or the force clause, forget the residual clause, isn't the outcome the same? No, Your Honor. I believe it would be different because the force clause requires that the statute itself contain an element of violent force under United States v. Jenkins. It was not qualified as a crime of violence because it did not have as an element the use of force. And similarly, the North Carolina Second Degree Kidnapping Statute does not have in it an element containing the use of force. And therefore, if this Court were to confine itself to the analysis under the first prong of 4B.1.2a, the force clause, and if it were to follow the holding in United States v. Jenkins, which I cited in my brief, that case is very similar to the case that we have regarding the kidnapping statute. They are two different kidnapping statutes, but neither of them has as an element the use of force. So in this case, I would urge the Court to undertake an analysis similar to the one used in Shell in the Fourth Circuit previous case, as I mentioned, and also noting the other cases that have followed, all of which rely partially on Stinson v. United States. The United States v. Rollins case that I cited, there's a quote in that opinion in which the Court states, in short, the application notes are interpretations of, not additions to, the guidelines themselves. And in the case of United States v. Bell, which I cited, the Court stated, the issue then is whether the government can rely solely upon the commentary when it expands upon the four offenses specifically enumerated in the guidelines referring to 4B.1.2a. The answer is no, according to United States v. Bell. But in Shell, the section 2L.1.2 commentary expressly covered more crimes than the section 4B.1.2 commentary. Here, the two sections of the commentary seem to be identical. Your Honor, I believe that the commentary to 2L.1.2 and the commentary to 4B.1.2a are not the same, unless I'm misunderstanding your question. I think Shell is distinguishable for that reason. Because I understand, Your Honor, the commentary that was being referred to differed from the commentary in 2L.1.2. That's correct, the commentary differed, but again, the analysis that was undertaken in U.S. v. Shell noted the difference in the use of the commentary and that the offenses should be treated differently under the two provisions. At least, that was my interpretation of the opinion in United States v. Shell. Your Honor would know much better. Your Honor, a recent case from the United States Supreme Court, it's not a case, I suppose it's an opinion, it's a denial of certiorari in Garko v. Speer, No. 17-225, that was issued on March 19th, just this year. In that opinion, the dissent notes that the United States Supreme Court is increasingly inclined not to tolerate lawmaking by agencies. In so noting, the court states that lawmaking by agencies transfers the judge's exercise of interpretive judgment to an agency. It results in an accumulation of government powers by allowing the agency that promulgated a regulation to change the meaning of that regulation at its discretion. We would submit that that is what has occurred or what did occur in the 2015 Guidelines, Section 4B, 1.2a, where the Sentencing Commission used the commentary to impermissibly add to what had already been defined within that subsection of the Guidelines. Now, implicitly, the Sentencing Commission has recognized that and has taken the proper steps to include kidnapping within the body of 4B, 1.2a. That change could be interpreted as an implicit recognition by the Sentencing Commission that it had overstepped previously in adding to the provisions that it had set forth. The Sentencing Commission is not authorized to add to its provisions without congressional approval, as set forth in U.S. v. Mistretta, cited in my brief. The Sentencing Commission only has the authority to issue its sentencing guidelines once they've been approved by Congress. The commentary has not been approved and, therefore, we would submit that treating the kidnapping under the 2015 Guidelines as an it transfers too much authority to the Sentencing Commission and removes it from the judicial and congressional realm. The United States has submitted a 28-J letter that I received last Friday citing Beckles, and this Court hasn't raised that issue, but I would like to note that the reliance on Beckles is misplaced in this case because we are not addressing the constitutionality of the residual clause in this case. We're focused on the enumerated provision, the enumerated offenses provision within 4B, 1.2a. Therefore, the reliance on Beckles is misplaced, and additionally, the citation that is contained within the government's letter relies upon a footnote from Justice Ginsburg's concurrence, and within her footnote, Justice Ginsburg wrote, I would accordingly defer any more encompassing ruling until a case we have agreed to take up requires one. I would interpret that statement of Justice Ginsburg to indicate that the enumerated offense analysis is not part of that case at all, and any suggestion that it is is something that Justice Ginsburg reserved for a future the Court does decide to consider using an enumerated offense analysis, we would submit that the analysis that was used in Flores-Granados is overly broad for the purposes of 4B, 1.2a, given that the history of interpreting a crime of violence has been to require either an serious potential risk of physical injury to another. That has been the case law throughout regarding 4B, 1.2a. Therefore, we would urge the Court not to use a definition as broad as Flores-Granados, but rather to focus more on the Model Penal Code or the Fifth Circuits or perhaps something more narrowly tailored to the crime of violence definition as we know it under 4B, 1.2a. Thank you. Thank you so much, counsel. Mr. Bianchi. Thank you, Your Honor. Good morning, Judge Keenan, Chief Judge Gregory, Judge Floyd. This Court has previously held in a published opinion that North Carolina second-degree kidnapping is categorically a crime of violence. United States v. Williams, which was decided in 2015 by this Court, said only an en blanc court can overrule a published decision of a prior penal unless that decision rests on authority that subsequently proves untenable. We do not have anything that has happened since Flores-Granados was initially decided to show that the authority that it rests on was subsequently proven untenable. Given that, we see no reason to disturb the Court's previous holding in Flores-Granados. It is categorically a crime of violence. The appellant, Counsel Miss Levy, in her brief cited Mathis as a suspect. This Court has had at least one opportunity to address that, and it held in United States v. Harper. That's 659 Appendix 735. That was a case where appellant counsel had conceded that North Carolina second-degree kidnapping was a crime of violence, then asked to supplement their brief post Mathis. That was not allowed, and the Court said that moreover, even if this issue were deemed forfeited rather than waived, it would not entitle Harper to relief because any error in this respect is not plain. It then specifically compared Mathis to Flores-Granados. So at least on one occasion, post Mathis, this Court has recognized that Mathis is there, but that it has no effect on the previous holding in Flores-Granados. Given that, and again, because of what we have in Williams and the clear law on that, there is no reason to disturb this Court's previous holding that North Carolina second-degree kidnapping is categorically a crime of violence. And I'll be glad to answer any questions on that issue. Well, one question, based on the procedural outlet of the case, you said post Mathis. I'm not sure we had a rigorous review of that Flores post Mathis in that scenario. It wasn't a question of plain error of view in those questions that chose not to look at it. It wasn't a vigorous merits view of Mathis, was it? No, it wasn't rigorous. I think it was you said it well and acknowledged that it was out there in the atmosphere about listing it. Exactly. It wasn't a rigorous review, but at least we have something post Mathis where this Court has at least acknowledged that Mathis is out there, and while it was a plain error review, compared the two cases, and again, perhaps had a chance there if it so chose to reevaluate Flores-Granados and it chose not to. Would you agree that even if the commentary is to be instructive, that it ought to be matched the type of cases that are enumerated as related to some nexus? Do you agree with that? Yes, the commentary just listed something that was totally, not totally, but seemingly out of line with something of violence or serious risk. We have to wait until, because if you're going to accept, you can't have it both ways. If you say we have to consider commentary as if it's enumerated, then we wouldn't do anything no matter how attenuated it might be from what's seeming to be what Congress passed, that violence or serious risk. Which is it? Do we have to accept it if it's or do we still have to do some comparison as to its connectivity with what Congress passed versus what was commentary? Well, in Stinson, it said, in Stinson v. United States, it said the commentary in the guidelines that interprets or explains the guideline is authoritative unless it violates the Constitution or a federal statute or is inconsistent with or a plainly erroneous reading of that guideline. So, we have that analysis put out there. Well, it might violate the Constitution if Congress passed it and someone else, not without Congressional authority, makes a comment and puts it in as a comment. Doesn't that raise questions in terms of And Stinson allows for the court to make that analysis if it believes that the commentary is inconsistent with or if it violates the Constitution or law or if it's inconsistent with or plainly erroneous reading of that guideline. So, the court has the ability to do that. That's been in place for some time. The court was aware of its ability to do that during Flores Grenados and it chose. Well, that's a problem when the state does so. But when the state defines this crime as such that, for example, here, second degree and not even second degree, it doesn't require violence at all. It can be about trick. Matter of fact, someone could be kidnapped and not even know it. That's correct. And this court has also held that that is part of the definition of generic kidnapping by forced threat or deception. So, if a person was asleep and you, I guess, moved their cart into another room or something, they could be kidnapped. They couldn't be under the state law. I mean, if they're absolutely asleep and you said, I'm going to the room and move their cart down to room five, you take them to room one. Wouldn't you agree under North Carolina law, they would be kidnapped? It would, but I also think you're using force there to move that person. Or the force is the force that takes the role of bed. It is, but it's still force. So, any force is enough to be a serious force? No, I think in your example, I think it is, especially when that person is unaware that they're being forcibly moved somewhere. But the whole idea, I thought, force was to be violent force, not just force. Violent force. There's an adjective in front of that noun. Yes, Your Honor. Violent, not just the force of muscularly taking a bed down there. Violence, the person's asleep. See, that's the problem. States don't care about what the federal interest is. They want their broad as possible so they can have a wide net to prosecute people. We're trying to shoehorn these things, and Congress gave some guidelines, and now we say, oh, we're going to extend it with commentary, and then we're finding a way. I guess the rule of lenity doesn't exist anymore. Used to, when I was in law school, we at least studied it. I guess now it's probably on parchment somewhere. We're always trying to find it. It was, it's, state of North Carolina has a right to define the crime any way they want. The question is, does it match with how the federal Congress, what they were trying to enhance? They were enhanced violent force and a serious, not just risk, serious risk. Those words mean something. And so now we're comparing it to a statue where you could be asleep and someone push your bed, like you said. Well, that's false. Well, Judge, and I think, again, this court has defined generic kidnapping, and it has found- Maybe it's wrong. Maybe it's wrong. Well, if it's wrong, it's wrong. But, again, we go back to Williams, where there are cases where the government doesn't agree with the opinion, there's cases where the appellant doesn't agree with the opinion, and there's cases where members of the court don't agree with the opinion. But the fact of the matter is, it's a published opinion, and our law says that- And we're stuck with it, right? Williams says that only an unbond- You're not stuck with it, but you have to at least have some authority that comes up after the fact that subsequently proves that untenable, and we don't have any authority post Flores-Granados that says that the analysis there is untenable. If anything, while it's not case law, the fact that kidnapping has been moved from the commentary to the actual guideline- Well, counsel makes a good point there. It showed that it was weak. It was weak and showed that it was defective. That's why we need to put it here where it's beyond assailing. You know what I'm saying? I think her point was well- I mean, counsel's point was well taken. You want to comment on the point she made? I thought the logic of her point was very consistent. Well, I don't know that it shows defective or the possibility that it was done in a way to alleviate the issue we're having today. And so if you say kidnapping is good to go now because it's enumerated in the actual text of the guidelines, but it wasn't good enough when it was in the commentary, despite the fact that we have the law about commentary being authoritative absent certain circumstances, I think at a minimum you create an issue where potentially, and it may or may not affect anybody, but timing of things. Somebody who gets sentenced right before the guidelines change, if the ruling is that that commentary is no longer valid, they get a windfall versus people who are sentenced post that. Well, I see. It just seemed like we interpreted these things such that it has no recognition to to make an elephant and when you finish, we've got at best a zebra. And then we say, well, we finish and that's it. So I guess it must be a zebra or must be an elephant. No, it's still a zebra. I mean, but it just seems like these things, but I know you're urging us that we can't do anything because you say florescence. We're manacled by that, right? That's correct, Your Honor. Counsel, could you just discuss the, what puzzles me a little bit about Flores-Granados is the discussion of nefarious purpose. The court seemed to, at page 493, seemed to be very interested in distinguishing or calling the North Carolina statute a crime of violence based on the fact that it says because the statute requires a specific nefarious purpose for conviction, even secondary kidnapping is well within the definition of a crime of violence. How does the nefariousness of a purpose play into this analysis? I thought that was a curious reference. I hadn't seen that before. I may have to ask for some clarification there, Judge Keenan, in terms of beginning of page 494 of Flores-Granados. Do you have a copy there? I have a copy, yes, Your Honor. Okay. It's the language where the court says here because the North Carolina statute requires a specific nefarious purpose for conviction, even for second degree kidnapping, it is well within the definition and thus it is categorically a crime of violence. And I was just wondering if you could relate to us what you see to be the role of a nefarious purpose in analyzing a crime of violence. Well, because in that same case, Flores-Granados, it chose to define kidnapping as unlawful restraint or confinement, two, by forced threat or deception, three, either for a specific nefarious purpose or with a similar heightened intent, or four, in a manner that with the victim's liberty in Flores-Granados, the court went through both the model penal code and some other states and other statutes and interpretations. Some have a conjunctive where they have to have nefarious purpose and substantial interference. A lot of them have that you have to have one or the other, so that's where that comes from and that this court defined kidnapping as needing either a nefarious purpose or substantial interference with the victim's liberty. Because North Carolina's kidnapping statute requires a nefarious purpose, the court said it fits well within the generic definition of kidnapping. And as the court also noted, the statute requires the perpetrator to specifically intend a heinous criminal act, the worst of the worst, went on to say that it would be astonishing if, and goes on to say, that this failed to constitute generic kidnapping. And then it said, because it's limited to conduct for a specific nefarious purpose, it prescribes criminal activity well within the generic definition of kidnapping. It says that the statute is what we mean when we say kidnapping. A lot of crimes are nefarious, aren't they? They are. And they're not violent. They don't necessarily have to be. It just seems to me nefarious is kind of in the eye of the victim, in a way. I mean, I understand your point about it being precedent and being controlling, but it just seems to me to be the essence of what a crime of violence is. Well, and I don't, I understand the court's concern, but I would just say that I believe Flores-Bonet is, it wasn't just a quick opinion. I think there's a good analysis in there of why they believe that is an element of generic kidnapping and why that meets what should be kidnapping. Counselor, do you think if somebody's on Wall Street and they steal billions of dollars out of people's 401k funds, do you think that's a nefarious crime? I would say given that Merriam-Webster defines nefarious as wicked, I would say so. I would, too. Interesting. All right. If there are no further questions, I'll hand it back over to Ms. Alivi. Thank you, Counsel. Thank you. Ms. Alivi, you have some time. I think that at this point, the court is faced with a choice as to whether to reevaluate Flores-Granados in light of the recent cases that I've cited and many others, and particularly in light of the fact that the residual clause is no longer a part of the sentencing guidelines provision under 4B1.2a. The court had inquired as to whether now the enumerated provision, the offenses that are enumerated today within 4B1.2a, which do include kidnapping, whether they would be assessed also against the requirement that a crime of violence be a crime of violence and that it have some element of, as the court noted, violent force, not just force, but violent force. And if this court undertakes a new analysis today that will be binding in the future, I think it's important to keep in mind that in the future, there will be no more residual clause analysis under that guideline provision. And again, I think it would be unwise to take on such an analysis given that the analysis could then lead to application under the new guidelines. If this court were to determine that the kidnapping offenses that were as referenced in the 2015 commentary need to be analyzed under an enumerated offense analysis, then presumably that analysis would continue through cases that come before the court in the next several years. And therefore, again, I would urge the court, if the court does undertake an enumerated offense analysis, to use a very narrow definition that does include some aspect of violence. And as the court noted, nefarious could include almost anything. The kidnapping statute in question today, the North Carolina Second Degree Kidnapping Statute, in addition to the nefarious purpose, the only other requirement is that someone be unlawfully confined or restrained. They don't even have to be removed. It says confined, restrained, or removed. So someone could conceivably not even be wheeled down the hall in the example that was cited earlier. They could just have someone come in and lock the door, and they're confined to the under the current North Carolina Second Degree Kidnapping Statute with an unlawful purpose, which, again, under any sort of common sense analysis defies logic as to how that could be a violent crime sufficient to enhance someone's sentence. And again, in this particular case, the impact is significant. Mr. Harris, under the career offender guidelines, was sentenced to 240 months based upon the career offender guidelines, whereas without that enhancement, his sentencing range would have been 110 to 137 months. So again, I would urge this court not to undertake an enumerated offense analysis today. It's not necessary, given that the kidnapping offense at the time of this crime was not contained within 4B1.2a. Any questions that I could answer in one minute and 16 seconds, I'd be happy to address. I think there are no questions, counsel. Thank you very much. Thank you much for the argument. Thank you both for your arguments. We'll come down and greet counsel and proceed to our final case for today.
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd